IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANDREW SCOTT,                         )
                                      )
            Plaintiff,                )
                                      )
    v.                                )        Case No. 17-2686-JWL
                                      )
UNION SECURITY INSURANCE              )
COMPANY,                              )
                                      )
            Defendant.                )
                                      )
_____)

# MEMORANDUM AND ORDER

Defendant insurer denied plaintiff long-term disability benefits, and plaintiff now asserts claims under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a). This matter presently comes before the Court on the cross-motions for summary judgment filed by plaintiff (Doc. # 36) and defendant (Doc. # 34). For the reasons set forth below, the Court concludes that summary judgment is warranted in favor of defendant on plaintiff's claims. Accordingly, the Court **grants** defendant's motion and **denies** plaintiff's motion.

## I. Background

The following facts are undisputed. Plaintiff worked as an orthopedic surgeon specializing in sports medicine. Plaintiff's employer provided a long-term disability plan

though a policy from defendant insurer. The Plan contained the following provisions relevant to this case:

> *Disability* or *disabled* means that in a particular month, you satisfy one or more of the three Tests, as described below.
>
> Occupation Test
>
> - During the first 36 months of a *period of disability* . . ., an *injury* . . . prevents you from performing at least one of the *material duties* of your regular occupation; and
>
> - after 36 months of *disability*, an *injury* . . . prevents you from performing at least one of the *material duties* of each *gainful occupation* for which your education, training, and experience qualifies you.
>
> Earnings Test
>
> > You may be considered *disabled* in any month in which you are actually working, if an *injury* . . . prevents you from earning more than 80% of your *monthly pay* in that month in any occupation for which your education, training or experience qualifies you. . . .
> >
> > . . .
> >
> > You may still be considered *disabled* according to the Occupation Test, without regard to your level of current earnings, if you meet the requirements of that Test.
>
> [Third Test not applicable here.]
>
> . . .
>
> *Gainful occupation* means an occupation in which you could reasonably be expected to earn at least as much as your Schedule Amount [in this case $6,000 per month].

Plaintiff ceased working as a surgeon for his employer in October 2012 because of a shoulder rotator cuff injury, for which he had surgery. In February 2013, defendant notified plaintiff that it approved his claim for benefits under the plan, with a disability onset date

2

of October 9, 2012, with benefits to commence in April 2013 pursuant to the Plan, with a maximum duration until April 2023 (assuming plaintiff continued to satisfy the terms of the Plan). This letter also noted that the definition of disability would change after 36 months and that an investigation would take place to determine whether plaintiff met the disability definition at that time.

In 2015, as the change-in-definition approached, defendant undertook an investigation of plaintiff's continuing eligibility for benefits. Defendant's medical review, based on a 2013 evaluation from plaintiff's surgeon, Dr. Burkhart, concluded that while plaintiff could not perform his own occupation, he could work full-time with light duty above the waist, with no other restrictions or limitations. Defendant completed a transferable skills analysis (TSA) and obtained a labor market study (LMS), which revealed four positions in the geographical area that plaintiff could perform, for which he was qualified, in which he could earn as much as his Schedule Amount (meaning such positions would be considered "gainful occupations" under the Plan). Defendant asked plaintiff if he was working, and plaintiff responded that he was considering a consulting engagement. On September 30, 2015, plaintiff notified defendant that he was starting work at a Culver's restaurant, as a front-line crew member, at a wage of $8.50 per hour. Plaintiff conceded during the claims process that he took that job in order to meet the Earnings Test of the Plan's disability definition.

On November 5, 2015, defendant sent plaintiff a letter concerning his eligibility for benefits after the change-in-definition after 36 months. The letter accurately quoted the Occupation Test and Earnings Test from the Plan, but it did not quote the introductory

3

language stating that a participant had to satisfy only one test to meet the disability definition. The letter then stated as follows:

> As of October 9, 2015 you have been disabled for 36 months. You must satisfy both the Occupation Test and the Earnings Test to receive further disability benefits.
>
> After reviewing all of the medical, financial, and vocational evidence in your file we have determined that you currently remain disabled as defined by the policy and are entitled to benefits.

The letter also notified plaintiff that it would continue to request updated information "to substantiate ongoing entitlement to disability benefits and to confirm the accuracy of the benefit paid;" that plaintiff should inform it if he returned to work or had a change in medical condition; and that he remained eligible until April 2023 as long as he remained disabled and satisfied the provisions of the Plan.

In March 2016, plaintiff left his Culver's job and took full-time employment as a medical officer with the FDA in Washington DC, at an annual salary of $197,000. In April 2016, after approximately one month, plaintiff left his employment with the FDA because he no longer desired to be employed so far from his home and family in the Kansas City area. Plaintiff notified defendant of these changes.

In July 2016, defendant notified plaintiff that it was continuing to review his eligibility for benefits, and it asked for updated information. Subsequently, defendant completed an updated vocational services assessment and obtained an updated LMS, which again concluded that positions were available in the area for plaintiff at a gainful wage. Defendant also updated its medical review, although the review was based on the same

2013 evaluation from Dr. Burkhart that had informed the prior review. Defendant also confirmed that plaintiff was not employed.

By letter of December 22, 2016, defendant notified plaintiff of the denial of his long-term disability benefits. The letter stated that plaintiff did not satisfy the Occupation Test because his medical condition did not prevent him from performing the material duties of each gainful occupation for which he was qualified. It also noted that the Earnings Test did not apply because plaintiff was not working. Defendant subsequently denied plaintiff's appeal of that decision.

In this suit, plaintiff asserts two claims under ERISA arising from the denial of his claim for benefits. First, plaintiff seeks an award of benefits under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B). Second, plaintiff seeks equitable relief to redress a breach of fiduciary duty by defendant pursuant to 29 U.S.C. § 1132(a)(3). Each party has moved for summary judgment on these claims.

## II. <u>Summary Judgment Standards</u>

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way."

*Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon the pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III. **Claim for Benefits**

#### A. *Applicable Standards*

As noted above, in his first claim plaintiff seeks an award of benefits under the Plan. As plaintiff concedes, the Plan gives defendant, the Plan administrator, discretion to determine eligibility and to construe terms under the Plan. Accordingly, the Court reviews defendant's decision to deny benefits under a deferential standard, asking only whether the denial was arbitrary and capricious. *See Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1130 (10th Cir. 2011). The Tenth Circuit has elaborated on that standard as follows:

> Using the arbitrary and capricious standard, we ask whether the administrator's decision was reasonable and made in good faith. We will uphold the decision of the plan administrator so long as it is predicated on a reasonable basis, and there is no requirement that the basis relied upon be the only logical one or even the superlative one. We look for substantial evidence in the record to support the administrator's conclusion, meaning more than a scintilla of evidence that a reasonable mind could accept as sufficient to support a conclusion.

*See id.* at 1133-34 (internal quotations and citations omitted).

Because defendant acted as both insurer and administrator of the Plan, it operated under an inherent conflict of interest, and the Court may weigh that conflict as a factor in reviewing the decision under the arbitrary-and-capricious standard. *See Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009). The conflict is weighed more heavily if circumstances suggest a higher likelihood that it affected the benefits decision.

*See id.* at 1193. The conflict does not shift the burden of proof, however, which remains with plaintiff. *See id.* at 1192-93.[1]

The parties agree that the Court's review is generally limited to the administrative record of the proceedings before defendant on plaintiff's claim for benefits. Plaintiff notes that, although extra-record materials may not be considered with respect to his eligibility for benefits, they may be considered with respect to the administrator's dual-role conflict of interest. *See Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1162 (10th Cir. 2010). Plaintiff asks the Court to consider defendant's discovery responses and its procedures manual. Plaintiff has not explained, however, how any such additional evidence shows an increased likelihood that defendant denied benefits in this case because of its inherent conflict. Thus, there is no reason to give any less deference to defendant.[2]

### B. *Occupation Test*

---

[1] Plaintiff cites *Null v. Community Hospital Ass'n*, 379 F. App'x 704 (10th Cir. 2010), in arguing that the burden should shift to defendant to justify a termination of benefits. The Court rejects that argument for several reasons. First, *Null* is an unpublished decision that therefore does not serve as precedent. Second, while the court in *Null* noted that "[t]here is authority" for shifting the burden when the plan administrator is attempting to terminate benefits, it did not expressly choose to follow any such authority. Third, the case is distinguishable because there the court was applying a *de novo* standard, not the arbitrary-and-capricious standard that applies in the present case. The Tenth Circuit has made clear that under the latter standard, plaintiff bears the burden of proof. *See Holcomb*, 578 F.3d at 1192-93. Finally, even if defendant bore the burden of proof in this case, the Court would conclude that defendant has met that burden to show that its benefits decision was not arbitrary and capricious.

[2] Moreover, even if the Court gave no deference to defendant's decision, it would nonetheless conclude, under a *de novo* standard, that plaintiff was not entitled to benefits under the Plan.

Under the Plan, plaintiff had to satisfy either the Occupation Test or the Earnings Test to be entitled to disability benefits. Defendant denied plaintiff benefits in December 2016 on the basis of its determination that plaintiff did not satisfy the provision of the Occupation Test that applied after 36 months. The Court concludes that that determination was reasonably supported by substantial evidence in the record and thus was not arbitrary and capricious. The only limitation or restriction mentioned by plaintiff's surgeon was that plaintiff could perform only light duty (lifting no more than 20 pounds) above the waist, and plaintiff did not submit any other relevant medical evidence to defendant. Initial and updated TSAs and LMSs revealed that there were positions available in the area for which plaintiff was qualified that met the applicable salary threshold (at least $6,000 per month). In addition, in 2016 plaintiff did actually secure a medical job at a salary of $197,000 per year.

Plaintiff's primary argument is that defendant stated in its November 2015 letter that plaintiff met the Occupation Test and that his medical condition had not changed when defendant determined otherwise in December 2016.[3] The record shows unequivocally, however, that the 2015 statement was a mistake. First, the letter misstated the requirements of the Plan, which clearly required satisfaction of only one of the disability tests. Second, defendant undertook the relevant analysis in 2015, which indicated that sufficient

---

[3] Defendant argues that the 2015 letter did not state that plaintiff had satisfied the Occupation Test, but the Court rejects that argument. The letter plainly stated that plaintiff had to meet both tests and that defendant had determined that plaintiff was disabled. The only conclusion to be drawn from those statements is that plaintiff had satisfied the Occupation Test.

9

employment was available, which meant in turn that plaintiff did not satisfy the "any occupation" version of the Occupation Test that applied after 36 months.

In addition, even if defendant had actually concluded in 2015 that plaintiff satisfied the Occupation Test as of that date, it had additional evidence to consider in 2016, namely plaintiff's employment with the FDA, which demonstrated that plaintiff's injury did not prevent him from performing the material duties of a gainful occupation. Plaintiff argues that one month at the FDA is not significant vocationally, but he does not explain why that employment does not provide relevant evidence. There is no evidence that plaintiff could not perform the duties of that job, and plaintiff does not dispute that he left that job only because he wished to return home to the Kansas City area and not because of any performance-related reason.

Most importantly, plaintiff has not attempted to explain (or point to evidence to support) why his injury actually prevented him from performing the duties of the gainful occupations identified by defendant. Thus, plaintiff has not shown that defendant's determination was incorrect.

Plaintiff also argues that defendant's TSAs and LMSs – and thus its ultimate determination – were based on a misunderstanding of his physical restrictions. Specifically, plaintiff argues that Dr. Burkhart, in his 2013 evaluation, did not actually state that plaintiff was restricted to light duty above the waist. The Court rejects this argument. In that evaluation, Dr. Burkhart addressed plaintiff's ability to work as an orthopedic surgeon, but he did not address plaintiff's ability to perform other jobs. With respect to plaintiff's prior occupation, after noting that that occupation required plaintiff to perform

heavy lifting, Dr. Burkhart stated that the results of a Functional Capacity Evaluation (FCE) showed that plaintiff "does not have the capacity to work full time even within light duty job at anything above waist level." Dr. Burkhart elaborated as follows:

> Since orthopedic surgeons do all their work above waist level and since his FCE does not support a capacity to work even [within] light duty status above waist level . . ., I do not think that he can return to his job as an orthopedic surgeon. I think that he is fully and permanently disabled from that occupation.

Finally, Dr. Burkhart stated that plaintiff was free to play lighter, low-level sports such as golf and tennis, which are not comparable to the heavy work performed by an orthopedic surgeon. Defendant reasonably interpreted this evaluation, including the opinion that plaintiff could play golf and tennis (sports that require some above-the-waist exertion), as indicating that although plaintiff could not perform his prior occupation, he could perform duties that required some (no more than light) exertion above the waist. Dr. Burkhart did not expressly set forth any limitation other than the inability to perform the occupation of orthopedic surgeon, which requires heavy lifting; he did not state that plaintiff could not perform any work whatsoever above the waist. Moreover, plaintiff has not provided any other evidence of physical limitations. (Plaintiff repeatedly told defendant during the claims process that defendant did not need any medical evidence other than the evaluation by Dr. Burkhart, a leading expert.) Thus, plaintiff has not cited any evidence to suggest that he actually had restrictions beyond those used for the TSAs and LMSs. Nor does plaintiff argue that the TSAs and LMSs were deficient in any other way. Accordingly, the Court concludes that defendant's reliance on those assessments – as well as on the evidence that plaintiff had performed the FDA job – was reasonable.

11

Plaintiff also notes that defendant did not insist on a new medical examination in 2016, but as noted, plaintiff insisted that his 2013 evaluation, which indicated that plaintiff had reached maximum recovery, was still sufficient. Plaintiff never indicated to defendant that his condition had worsened in any way. Even now, plaintiff has not argued that a new examination would have revealed additional limitations.

Finally, plaintiff cites the December 2016 letter's determination that plaintiff did not meet the Occupation Test as of October 31, 2016, and he argues that defendant's determination is undermined by the fact that he was still paid benefits up to that date, even while he was not working at all (which meant that he could only qualify as disabled if he met the Occupation Test). Those payments do not provide evidence that he actually met the test in December 2016, however; rather, they indicate only that defendant had not completed its determination (for which it obtained an updated TSA and LMS and asked for any additional relevant medical evidence) before then. Again, plaintiff has never articulated why he was unable to perform the duties of the gainful occupations identified by defendant (despite being able to perform the FDA job). Thus, plaintiff's receipt of benefits after he left the FDA serves only as evidence that he received a windfall, and not evidence that he actually satisfied the Occupation Test and was therefore disabled in December 2016.

### C. *Earnings Test*

By its express terms, the Earnings Test applied only if the claimant was working. For that reason, defendant declined to apply the test in making its determination in December 2016. Plaintiff does not dispute that he was not working after he left the FDA

in April 2016. Thus, the Earning Test did not provide a basis for plaintiff's continuing eligibility for disability benefits, and defendant's conclusion to that effect was reasonable.

Plaintiff argues that defendant, in deciding when to make its benefits determination in 2016, was able to determine when the Earnings Test inquiry would be triggered, without informing plaintiff of any potential trigger date (to allow plaintiff to begin working). Plaintiff argues that any interpretation of the Plan that allowed such conduct by defendant was unreasonable. Plaintiff notes that the Plan states only that a claimant may not be considered disabled *in any month* in which he is actually working. Thus, plantiff appears to argue that the Plan should be interpreted to him to allow him to receive benefits again in some future month in which he is working.[4]

The Court will not consider this argument for multiple reasons. First, plaintiff made this argument for the first time in its reply brief in support of his summary judgment motion (which, because of the cross-motions, was plaintiff's third opportunity to brief the issues), and the Court does not consider arguments not raised in the initial brief. *See U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 2006 WL 1007099, at *3 n.5 (D. Kan. Apr. 14, 2006) (citing *Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003)). Second, plaintiff did not contend in the pretrial order that defendant misinterpreted the Plan, and thus plaintiff failed to preserve any such claim. Third, plaintiff has not shown

---

[4] Defendant argues that the 2015 letter did not provide a final determination of plaintiff's eligibility after 36 months, and that such a determination was not made until December 2016. The record does not support that argument, however, as the 2015 letter stated that, after reviewing the medical, financial, and vocational evidence, defendant had "determined" that plaintiff remained disabled under the Plan.

that any such argument is ripe, as plaintiff has failed to show that he actually sought and was denied benefits in a month while he was working.

For these reasons, the Court concludes that plaintiff has not shown that defendant's denial of benefits in December 2016 was unreasonable or was not supported by substantial evidence. Accordingly, the Court grants summary judgment in favor of defendant on plaintiff's claim for benefits under Section 1132(a)(1)(B), and it denies plaintiff's motion for summary judgment on that claim.

### IV. Claim for Breach of Fiduciary Duty

Plaintiff also asserts a claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3), which allows a plan participant to sue to obtain appropriate equitable relief. *See id.* As the basis for that claim, plaintiff alleges that defendant made a material misrepresentation when it represented in the November 2015 letter that plaintiff met the provision of the Occupation Test that applied after 36 months. Defendant does not dispute that a material misrepresentation may constitute a breach of fiduciary duty under Section 1132(a)(3). *See, e.g.*, *Randles v. Galichia Med. Group, P.A.*, 2006 WL 3760251, at *13 (D. Kan. Dec. 18, 2006) (citing *Romero v. Allstate Corp.*, 404 F.3d 212, 226 (3d Cir. 2005)).

Defendant argues that plaintiff may not pursue this claim because the claim for benefits under Section 1132(a)(1)(B) provides an adequate remedy. *See Swearingen v. Honeywell, Inc.*, 189 F. Supp. 2d 1189, 1197 (D. Kan. 2002) (plan beneficiary may not seek equitable relief under Section 1132(a)(3) if he has another adequate ERISA remedy

available, such as a claim for benefits under Section 1132(a)(1)(B)). Defendant notes that in the pretrial order, plaintiff seeks only an award of benefits (in addition to a declaration of violation and an injunction against future violations), and it argues that any claim for benefits may be pursued only under Section 1132(a)(1)(B).

The Court is not persuaded that plaintiff cannot pursue this claim. The Supreme Court has made clear that equitable relief under Section 1132(a)(3) may include monetary relief intended to make a plan beneficiary whole for a fiduciary's violation of its duty. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 441-42 (2011). In this case, plaintiff seeks a monetary award to compensate him for the loss of benefits that he allegedly sustained because of his reliance on a material misrepresentation by defendant. Thus plaintiff does not seek exactly the same relief that he seeks in his claim for benefits under Section 1132(a)(1)(B). Accordingly, the Court will consider the merits of plaintiff's claim for breach of fiduciary duty.[5]

The parties agree that, to succeed on his claim for a breach of fiduciary duty based on a misrepresentation, plaintiff must prove defendant's status as an ERISA fiduciary, a material misrepresentation, and detrimental reliance on that misrepresentation. *See*

---

[5] The Court does agree with defendant that plaintiff is limited to the relief sought in the pretrial order. In his briefs, plaintiff requests equitable relief in the form of an order requiring defendant to grant plaintiff some period of time in which to meet the requirements of the Occupation Test or the Earnings Test, or an order requiring defendant to enroll plaintiff in a rehabilitation program. Plaintiff did not preserve any claim for such specific non-monetary relief in the pretrial order, however, which governs the present scope of plaintiff's lawsuit. Nor has plaintiff moved to amend the pretrial order to include any such claim.

15

*Randles*, 2006 WL 3760251, at *13 (citing *Romero*, 404 F.3d at 226); *Fulghum v. Embarq Corp.*, 2011 WL 13615, at *2 (D. Kan. Jan. 4, 2011) (citing *Randles* for these elements).[6] Plaintiff claims in his briefs that he did not take another job (after leaving the FDA) because he relied on defendant's statement in the November 2015 letter that he met the Occupation Test. The Court agrees with defendant, however, that plaintiff has failed to provide any evidence that he actually relied on this representation.

At the summary judgment stage, plaintiff is required to support his claim with evidence. Plaintiff argues that he may rely on evidence outside the administrative record in proving his claim for breach of fiduciary duty, and defendant does not dispute that position. Plaintiff has not provided any such evidence to show that he actually relied on the letter in choosing not to seek employment, however, not even an affidavit stating that he did so rely. Plaintiff argues generally that he should have the opportunity to present testimony at trial (for instance concerning communications between the parties), but he was obligated to provide the necessary evidence at this stage.

In arguing that he did rely, plaintiff points only to the letter itself and to the fact that defendant continued to pay him benefits even after he left the FDA. At most, however, that evidence supports an argument that any reliance by plaintiff was reasonable; it does

---

[6] Plaintiff cites the Supreme Court's statement in *CIGNA* that there is no general principle requiring detrimental reliance before an equitable remedy may be decreed. *See CIGNA*, 563 U.S. at 443. The Supreme Court further stated, however, that such reliance must be shown before a remedy equivalent to estoppel may be imposed. *See id.* Plaintiff was harmed by defendant's misrepresentation only if he relied on it, and thus this Court would not grant plaintiff any equitable relief in the absence of detrimental reliance. Plaintiff has not cited any authority indicating that a court may grant relief for a breach based on a misrepresentation in the absence of detrimental reliance.

not create any reasonable inference that he actually relied on the letter. In addition, in the statement of facts in his summary judgment motion, plaintiff states that he relied on defendant's representations "in his pursuit of employment," but in support of that statement, plaintiff cites only two notices that he gave to defendant about taking jobs. Those notices do not provide evidence that he chose not to take other jobs because of defendant's representations. In fact, plaintiff's decision to take the FDA job after he received the 2015 letter undercuts any argument that he chose not to work because of the statements in the letter.

As defendant noted in its briefs, plaintiff (through his attorney) stated during the claims process that he took the Culver's job in October 2015 specifically in an attempt to satisfy the Earnings Test. That fact is not enough to save plaintiff's claim, however. That evidence might lend credibility to a suggestion that plaintiff would do the same thing again if necessary. Again, however, there is no evidence that in 2016 plaintiff actually decided not to pursue that course because of the 2015 letter's statement that he met the Occupation Test. Moreover, the fact that plaintiff, a former orthopedic surgeon, did not quit his menial Culver's job after receiving the letter provides evidence of a lack of reliance; if he was working only to satisfy the Earnings Test and if he actually believed (from the letter) that he had satisfied the Occupation Test (because of the letter), he would have had no reason to continue in that job for four more months.[7]

---

[7] Plaintiff essentially argues that he believed and relied on the statement in the 2015 letter that he met the Occupation Test, but that he did not believe or rely on the statement that he needed to meet both tests (otherwise he would have made sure he continued working to meet the Earnings Test).

17

Therefore plaintiff has not met his burden to provide evidence of actual reliance sufficient to support his claim for breach of fiduciary duty based on a misrepresentation. Accordingly, defendant is entitled to summary judgment on that claim.

The only other conduct identified by plaintiff as a breach of fiduciary duty is defendant's alleged failure to comply with its own manual for processing claims. Plaintiff mentioned such a breach only in his initial summary judgment brief; he appears to have abandoned that claim in his response to defendant's motion and in his reply in support of his own motion, in which he argued only a breach based on defendant's misrepresentation. Nor has plaintiff sufficiently supported a claim based on manual violations, including by citation to relevant authority.

The Court concludes that plaintiff has not provided evidence of a breach based on any of the particular violations cited by plaintiff that would be sufficient to persuade the Court to grant equitable relief here. First, plaintiff claims that defendant failed to comply with the manual's requirement that it act in good faith with respect to benefits claims. Plaintiff has not provided any evidence, however, that defendant acted in bad faith. The record supports only the conclusion that defendant made a mistake in the 2015 letter and that it failed to correct that mistake until the 2016 denial. Second, plaintiff claims that defendant failed to obtain additional information about plaintiff's limitations and abilities. The record shows, however, that in 2016 defendant updated its TSA and LMS and asked plaintiff for any additional medical information, and plaintiff has not identified any additional limitations that that defendant should have considered. Third, plaintiff claims that defendant violated the manual in failing to educate plaintiff about possible

rehabilitation programs. The record shows, however, that the parties did discuss plaintiff's work options, and there is no evidence that plaintiff needed or wanted specific services from defendant (he apparently succeeded in securing a high-paying job with the FDA without those services). Moreover, plaintiff has not explained (or provided evidence to show) how he was harmed by any such failure by defendant or how that failure relates to his loss of benefits (the only harm claimed in the pretrial order). For instance, plaintiff has not preserved any claim that he lost income from another job because he did not receive rehabilitation services. Fourth and finally, plaintiff claims that defendant failed to comply with the manual's instruction to communicate well with claimants. Any such claim mirrors plaintiff's misrepresentation claim, however, and is similarly doomed by a lack of evidence of actual reliance.

Plaintiff has failed to support any claim for equitable relief under Section 1132(a)(3) for a breach of fiduciary duty. Accordingly, defendant is awarded summary judgment on all of plaintiff's claims, and plaintiff's motion is denied in its entirety.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion for summary judgment (Doc. # 34) is hereby **granted**, and judgment shall be entered in favor of defendant on plaintiff's claims.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiff's motion for summary judgment (Doc. # 36) is hereby **denied**.

IT IS SO ORDERED.

Dated this 5th day of February, 2019, in Kansas City, Kansas.

                                                s/ John W. Lungstrum
                                                John W. Lungstrum
                                                United States District Judge